KAMALA D. HARRIS
Attorney General of California
SARAH E. MORRISON
Supervising Deputy Attorney General
OLIVIA W. KARLIN (State Bar No. 150432)
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Telephone: (213) 897-0473
Fax: (213) 897-2802
E-mail: Olivia.Karlin@doj.ca.gov
*Attorneys for Plaintiff*

FILED
CLERK, U.S. DISTRICT COURT
SEP 16 2014
CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STATE OF CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL,**<br><br>Plaintiff,<br><br>v.<br><br>**STANDARD NICKEL-CHROMIUM PLATING COMPANY, a California corporation, et. al,**<br><br>Defendants. | Case No.: CV13-03600 RGK (AJWx)<br><br>[PROPOSED] CONSENT DECREE BETWEEN PLAINTIFF AND DEFENDANT ESTATE OF HAIG DULGARIAN AND DOUGLAS DULGARIAN AS EXECUTOR FOR THE ESTATE OF HAIG DULGARIAN<br><br>Judge: The Honorable R. Gary Klausner |

## INTRODUCTION

1. Plaintiff the State of California Department of Toxic Substances Control ("Plaintiff" or the "Department") filed a Complaint in this matter pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., against several parties, including Defendant Estate of Haig Dulgarian and Defendant Douglas Dulgarian as the Executor for the Estate of Haig Dulgarian.[1] Through its Complaint, Plaintiff seeks

---

[1] Defendant Estate of Haig Dulgarian, Defendant Douglas Dulgarian as the Executor for the Estate of Haig Dulgarian, and Douglas Dulgarian as the Trustee of the Survivor's Trust
(continued...)

1  [PROPOSED] CONSENT DECREE BETWEEN PLAINTIFF AND
   THE ESTATE OF HAIG DULGARIAN

1  the recovery of past "Response Costs"[2] incurred by Plaintiff in responding to
2  releases and/or threatened releases of hazardous substances at or from the
3  properties located at 811, 817/819, 825, and 826 East 62nd Street, Los Angeles,
4  CA 90001, also collectively known as the Standard Nickel property ("Site"),
5  pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a). Plaintiff also seeks
6  declaratory relief under CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2), alleging
7  that defendants are jointly and severally liable for future Response Costs to be
8  incurred by Plaintiff to address the extent of releases and/or threatened of
9  hazardous substances at or from the Site.

10      2.    In its Complaint, Plaintiff alleges in relevant part that:

11      a.    In approximately 1927, a metal plating facility, called "Dulgarian
12  Sons Standard Plating Company," was established by certain members of the
13  Dulgarian family on property at the Site. The facility operations included plating
14  the chromium plating of pipes for the oil industry. The business was later
15  incorporated in 1946 under the name Standard Nickel-Chromium Plating
16  Company.

17      b.    Haig Dulgarian co-owned the following portions of the Site during
18  the following time periods: 811 E. 62nd Street from 1961 to 1988; 817/819 E. 62nd
19  Street from 1960 to 1988; 825 E. 62nd Street from 1984 to 1988 and from 1993 to
20  the present; and 826 E. 62nd Street from 1988 to the present. Plating operations
21  were conducted on the Site during this time. The Department contends, but
22  Settling Defendants dispute, that hazardous substances were released into the
23  environment as a result of plating operations on the Site.

24      c.    In June of 1997, the Department conducted a site screening for the

---

(...continued)
created under the Dulgarian Family Trust dated September 29, 1992 are sometimes collectively referred to herein as "Settling Defendants." Plaintiff and Settling Defendants are sometimes collectively referred to herein as "Parties." (See, *infra*, Section III.)

[2] The term "Response Costs" is defined in Section III, *infra*.

United States Environmental Protection Agency as part of an investigation of the release and/or threatened release of hazardous substances at or from the Site. In 2008, the Department took the lead to further investigate the release and/or threatened release of hazardous substances at or from the Site. The Department's investigation established that hazardous substances including, but not limited to, hexavalent chromium, trivalent chromium, and volatile organic compounds, including the industrial solvents trichloroethylene and perchloroethylene, were present in the soil, soil gas, and groundwater at the Site.

    d.    On or about June 9, 2009, the Department issued an Imminent and Substantial Endangerment Determination and Remedial Action Order ("ISE Order") ordering potentially responsible parties to investigate and remediate the release of hazardous substances at or from the Site. On or about December 29, 2010, the Department issued an Amendment to the Imminent and Substantial Endangerment Determination and Remedial Action Order ("Amendment") adding certain parties, including Haig Dulgarian, and amending certain properties identified in the ISE Order.

    e.    None of the potentially responsible parties named in either the ISE Order in the Amendment, including the Estate of Haig Dulgarian, initiated or completed the investigation and remediation of releases and/or threatened releases of hazardous substances at or from the Site as required by the ISE Order and Amendment.

    f.    Response actions were and are necessary to remove and remedy the hazardous substances released and/or threatened to be released at and from the Site.

    g.    The Department has incurred Response Costs conducting and overseeing response actions related to the release and/or threatened release of hazardous substances at or from the Site, including contamination of the soil, soil vapor and groundwater. These response actions include, but are not limited to:

issuing orders to potentially responsible parties requiring response actions at and around the Site; reviewing sampling and analysis of environmental media; performing inspections and preparing reports; reviewing work plans for investigation and remediation; conducting Site visits and overseeing field work; holding public meetings; meeting with potentially responsible parties; and complying with the requirements of the California Environmental Quality Act. Response Costs incurred by Plaintiff remain unpaid.

    h.    Plaintiff will continue to incur response costs conducting and/or overseeing response actions related to the release and/or threatened release of hazardous substances at or from the Site in the future.

    3.    The Department contends, but Settling Defendants dispute, that Settling Defendants, as former owners and/or operators of a portion of the Site, are jointly and severally liable under CERCLA for all Response Costs incurred by Plaintiff related to the Site.

    4.    The Parties agree and this Court, by entering this Consent Decree, finds that this Consent Decree has been negotiated by the Parties in good faith, settlement of this matter will avoid expensive, prolonged and complicated litigation between the Parties, and this Consent Decree is fair, reasonable, in the public interest and consistent with the purpose of CERCLA.

    **THEREFORE**, the Court, with the consent of the Parties to this Consent Decree, hereby **ORDERS, ADJUDGES, AND DECREES**, as follows:

## I. JURISDICTION

    5.    The Court has subject matter jurisdiction over the matters alleged in this action pursuant to 28 U.S.C. § 1331 and CERCLA and personal jurisdiction over each of the Parties. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b) and CERCLA. Solely for the purposes of this Consent Decree and the underlying Complaint, Settling Defendants waive all objections and defenses that Settling Defendants may have to the jurisdiction of the Court or to venue in this

district. Settling Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

6. The Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree if necessary.

## II. SETTLEMENT OF DISPUTED CLAIMS

7. This Consent Decree resolves Settling Defendants' alleged liability in connection with the release and/or threatened release of hazardous substances at or from the Site under CERCLA § 107, 42 U.S.C. § 9607, in exchange for payment by Settling Defendants to reimburse a portion of Plaintiff's Response Costs incurred and to be incurred at or in connection with the Site.

8. Settling Defendants do not admit any of the allegations of the Complaint. Nothing in this Consent Decree shall be construed as an admission of any issue of law or fact or of any violation of law. Except as otherwise provided by this Consent Decree, this Consent Decree shall not prejudice, waive or impair any right, remedy or defense that Settling Defendants may have in any other or further legal proceeding.

9. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the Parties.

## III. DEFINITIONS

10. Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them therein. Whenever terms listed below are used in this Consent Decree, the definitions below shall apply.

11. "The Department" or "Plaintiff" shall mean the State of California Department of Toxic Substances Control, and its predecessors and successors. The Department is a public agency of the State of California organized and existing under and pursuant to California Health and Safety Code § 58000 et seq. Under California law, the Department is the state agency responsible for

determining whether there has been a release and/or threatened release of hazardous substances into the environment, and for determining the actions to be taken in response thereto.

12. "Effective Date" shall mean the date the Court enters an Order approving this Consent Decree.

13. "Parties" shall mean Plaintiff, the Estate of Haig Dulgarian, Douglas Dulgarian as Executor for the Estate of Haig Dulgarian, and Douglas Dulgarian, as Trustee of the Survivor's Trust created under the Dulgarian Family Trust dated September 29, 1992 (the "Haig Survivor's Trust"), collectively.

14. "Party" shall mean Plaintiff, the Estate of Haig Dulgarian, Douglas Dulgarian, as Executor for the Estate of Haig Dulgarian, or Douglas Dulgarian, as Trustee of the Haig Survivor's Trust, individually.

15. "Response Costs" shall mean all costs of "removal," "remedial action," or "response," as those terms are defined by CERCLA § 101, 42 U.S.C.§ 9601, related to the release and/or threatened release of hazardous substances at or from the Site, including the soil and groundwater.

16. "Settling Defendants" shall mean the Estate of Haig Dulgarian and Douglas Dulgarian as Executor for the Estate of Haig Dulgarian, and Douglas Dulgarian, as Trustee of the Haig Survivor's Trust, collectively. However, as specified in Paragraph 18, below, the obligations of Settling Defendants outlined in this Consent Decree are joint and several.

17. The "Site" shall mean the properties located at 811, 817/819, 825, and 826 East 62nd Street, Los Angeles, CA 90001, also collectively known as the Standard Nickel property, including the extent of the releases of hazardous substances at or from the Site, including its various parcels, into the environment, including the soil and groundwater.

## IV. SETTLING DEFENDANTS' OBLIGATIONS

18. The obligations of Settling Defendants under this Consent Decree are

1 | joint and several.

2 |     19.    Settling Defendants shall collectively pay to Plaintiff one million two hundred thousand dollars ($1,200,000.00) within thirty (30) calendar days of the Effective Date of this Consent Decree. This payment shall be credited to the Department's Standard Nickel Site specific special subaccount established pursuant to California Health and Safety Code section 25330.4.

    20.    The payment specified in Paragraph 19 above, shall be made by certified or cashier's check made payable to Cashier, California Department of Toxic Substances Control, and shall bear on its face the phrase, "Standard Nickel Chromium 294 Account."

    a.    The payment shall be sent to:

> Cashier
> Accounting Office, MS-21A
> Department of Toxic Substances Control
> P.O. Box 806
> Sacramento, CA 95812-0806

    b.    A copy of the check shall be mailed to:

> Vivian Murai, Senior Attorney
> California Department of Toxic Substances Control
> Office of Legal Counsel, MS-23A
> P.O. Box 806
> Sacramento, CA 95812-0806

Or e-mailed to Vivian.Murai@dtsc.ca.gov in .pdf or .jpg format.

## V. ACCESS TO INFORMATION

    21.    By no later than thirty (30) calendar days of the Effective Date, Settling Defendants shall have provided to the Department copies of any and all records, documents, and information within their possession or control, or that of their agents, relating to: (a) the ownership, operation or control of the Site; (b) the purchase, storage, use, handling, generation, treatment, transportation, or disposal of hazardous substances in connection with the Site; (c) releases and/or threatened releases of hazardous substances at or from the Site, including the soil and

1  groundwater; and (d) removal, remedial or response actions conducted by any
2  person at the Site.
3     22.   If after the Effective Date, Settling Defendants obtain any records,
4  documents or information described in Paragraph 21 not previously provided to
5  Plaintiff, Settling Defendants agree to provide Plaintiff with copies of the
6  additional records, documents or information within ten calendar days of the date
7  Settling Defendants obtained the records, documents or information.
8     23.   Settling Defendants may assert confidentiality claims covering part or
9  all of the documents or information submitted to Plaintiff under this Consent
10 Decree to the extent permitted by and in accordance with California Health and
11 Safety Code § 25358.2. Documents or information determined to be confidential
12 by Plaintiff will be afforded the protection specified in California Health and
13 Safety Code § 25358.2. Settling Defendants may also assert that certain
14 documents, records and other information are privileged under the attorney-client
15 privilege or any other privilege recognized by federal law. If Settling Defendants
16 assert such a privilege in lieu of providing documents, Settling Defendants shall
17 provide Plaintiff with a description of the document withheld and the basis for
18 asserting the privilege.

### VI. COVENANT NOT TO SUE BY PLAINTIFF

20    24.   Except as expressly provided in Section VII (Reservation of Rights)
21 of this Consent Decree, Plaintiff covenants not to sue Settling Defendants,
22 pursuant to CERCLA, the California Hazardous Substances Account Act
23 ("HSAA"), California Health and Safety Code § 25300 et seq., or any other
24 statute, regulation, or common law theory to: (a) recover Plaintiff's Response
25 Costs and all other damages (with the exception of natural resource damages)
26 related to the Site; or (b) require Settling Defendants to conduct response actions,
27 including removal or remedial actions, related to the release and/or threatened
28 release of hazardous substances at or from the Site, including the soil and

groundwater. This Covenant Not to Sue is conditioned upon the complete and satisfactory performance by Settling Defendants of all their obligations under this Consent Decree. However, this Covenant Not to Sue shall be revoked and deemed not effective if Settling Defendants fail to make the payment required by Paragraph 19 of this Consent Decree.

## VII. RESERVATION OF RIGHTS

### 25. Obligations Under This Decree

In the event Plaintiff initiates any legal proceedings against Settling Defendants for non-compliance with this Consent Decree, Settling Defendants shall not contest their obligation to fully comply with this Consent Decree. However, in such proceedings, Settling Defendants may raise any and all defenses that Settling Defendants deem to be relevant to the issue of whether or not they have complied with the terms of the Consent Decree.

### 26. Claims Regarding Other Sites

Nothing in this Consent Decree is intended or shall be construed to limit the rights of any Party with respect to claims arising out of or relating to the deposit, release, or disposal of hazardous substances at any location other than the Site subject to this Consent Decree. This subsection, however, shall not limit the covenants not to sue and releases in this Consent Decree that apply to claims arising from the spread or passive migration of hazardous substances from the Site.

### 27. Claims Against Other Persons and Entities

Nothing in this Consent Decree shall constitute or be construed as a release or covenant not to sue regarding any claim or cause of action against any person (as defined in CERCLA § 101(21), 42 U.S.C. § 9601(21), who is not a signatory to this Consent Decree, for any liability he, she or it may have arising out of or relating to the Site. The legal and equitable rights retained include, but are not limited to: (i) the Department's right to compel any person who is not a signatory

to the Consent Decree to conduct response actions for hazardous substance contamination at or from the Site; and (ii) the rights of the Parties to seek reimbursement and/or other relief from any person who is not a signatory to this Consent Decree for Response Costs incurred as a result of such contamination. Except as provided in Paragraph 34 (Parties Bound), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a party to this Consent Decree.

28. **Reservation of Claims**

The Plaintiff's Covenants Not to Sue (Section VI) do not pertain to the following matters:

a. Failure of Settling Defendants to meet the requirements of this Consent Decree;

b. Damage to natural resources, as defined in CERCLA § 101(6), 42 U.S.C. § 9601(6), including all costs incurred by any natural resources trustees;

c. Settling Defendants' introduction of any hazardous substance, pollutant, or contaminant to the Site after the Effective Date;

d. Overt acts by Settling Defendants after the Effective Date that cause the exacerbation of the hazardous substance conditions existing at or from the Site;

e. Claims based on liability arising from the past, present, or future disposal of hazardous substances at sites or locations other than the Site. This subsection (e), however, shall not limit the covenants not to sue in this Consent Decree that apply to claims arising from the passive migration of hazardous substances from the Site; and

f. Claims based on criminal liability. At present, however, Plaintiff has no pending criminal claim or investigation, nor is it aware of any facts that would give rise to a criminal investigation, against any Settling Defendants.

//

Case 2:13-cv-03600-RGK-AJW   Document 190   Filed 09/16/14   Page 11 of 17   Page ID
Case 2:13-cv-03600-RGK-AJW   Document 165-1   Filed 06/02/14   Page 11 of 17   Page ID
#:5148

29. **Other Rights Reserved**

Except as expressly provided in the Consent Decree, nothing in the Consent Decree is intended nor shall it be construed to preclude the Department from exercising its authority under any law, statute or regulation, including, but not limited to, taking action in the future to require the owner of the Site to record an Environmental Restrictions Covenant. Furthermore, nothing in the Consent Decree is intended, nor shall it be construed, to preclude any other state agency, department, board or entity or any federal entity from exercising its authority under any law, statute or regulation.

30. **Plaintiff's Further Reservation**

Notwithstanding any other provision in the Consent Decree, Plaintiff reserves the right to institute proceedings in this action or in a new action, seeking to compel Settling Defendants, or any of them, to perform additional response actions at the Site and/or to reimburse Plaintiff for additional Response Costs if:

a. After the Effective Date of the Consent Decree, the Department receives information previously unknown to the Department, indicating that the information provided by Settling Defendants regarding their involvement at the Site and upon which the Department relied upon in entering into the Consent Decree is false, or in any material respect, inaccurate.

b. Conditions previously unknown to Plaintiff, for which Settling Defendants or any of them, is liable under any statute or law, are discovered at the Site after the Effective Date, and these previously unknown conditions indicate a release and/or threat of release of hazardous substances into the environment.

**VIII. COVENANT NOT TO SUE BY SETTLING DEFENDANTS**

31. Settling Defendants covenant not to sue and agree not to assert any claims or causes of action against Plaintiff or its contractors or employees that arise out of the transaction or occurrence that is the subject matter of Plaintiff's Complaint or for any injuries, losses, costs, or damages caused or incurred as a

result of the performances or requirements of this Consent Decree or the Department's response actions at the Site. The Settling Defendants reserve the right to take action to compel the Plaintiff to comply with the terms of this Consent Decree.

## IX. CONTRIBUTION PROTECTION

32. With regard to claims for contribution against Settling Defendants for "Matters Addressed" in this Consent Decree, the Parties agree, and the Court finds as follows:

    a. This Consent Decree constitutes a judicially approved settlement within the meaning of CERCLA section 113(f)(2), 42 U.S.C. § 9613(f)(2).

    b. This Consent Decree requires that Settling Defendants pay certain costs with respect to their liability at the Site.

    c. Settling Defendants are entitled to the contribution protection provided by CERCLA section 113(f)(2), 42 U.S.C. § 9613(f)(2), and by state statutory and common law for the "Matters Addressed" in this Consent Decree, except for actions and claims identified in the Department's Reservation of Rights (Section VII).

    d. The "Matters Addressed" in this Consent Decree include: (1) all past and future Response Costs and all other damages (with the exception of natural resource damages) incurred by or on behalf of the Department with respect to the Site, including the Department oversight costs; (2) all past and future Response Costs that have been and/or may be incurred by or on behalf of any other person, including any past, present or future Site owner or operator, with respect to the Site; and (3) interest on amounts referred to in subsections (1) and (2).

    e. The protection provided for in this Section IX is conditioned upon receipt by the Department of the timely payment required by the Settling Defendants pursuant to this Consent Decree.

    f. Nothing in this Consent Decree diminishes the right of the

Department under CERCLA to pursue any other person for Response Costs incurred by the Department and to enter into settlements that give rise to contribution protection with those persons.

## X. NOTIFICATION

33. Notification to or communication among the Parties as required or provided for in this Consent Decree shall be addressed as follows:

For Plaintiff:

    Tedd Yargeau, Project Manager
    Chatsworth Cleanup Program
    California Department of Toxic Substances Control
    9211 Oakdale Avenue
    Chatsworth, CA 91311-6505

    Vivian Murai, Senior Attorney
    California Department of Toxic Substances Control
    Office of Legal Counsel, MS-23A
    P.O. Box 806
    Sacramento, CA 95812-0806

For Settling Defendants:

    Douglas Dulgarian, Executor and Trustee
    c/o Sean M. Sherlock
    Snell & Wilmer L.L.P.
    600 Anton Boulevard, Suite 1400
    Costa Mesa, CA 92626

## XI. GENERAL PROVISIONS

34. **Parties Bound**

This Consent Decree shall apply to, be binding upon, and inure to the benefit of the Parties and their representatives, successors, heirs, legatees, and assigns.

35. **No Waiver of Enforcement**

The failure of the Department to enforce any provision of this Consent Decree shall in no way be deemed a waiver of such provision or in any way affect the validity of this Consent Decree. The failure of the Department to enforce any

such provision shall not preclude it from later enforcing the same or any other provision of this Consent Decree.

36. **No Findings**

The statements of fact set forth in this Consent Decree are not intended to constitute a finding by the Department as to the risks to human health or the environment that may be posed by contamination at the Site. This Consent Decree does not constitute a representation by the Department that the Site, or any part thereof, is fit for any particular purpose.

37. **Governmental Liability**

Nothing herein is intended, nor shall be construed, to limit, impair, or prejudice the governmental tort, statutory or sovereign immunities available to the Department under applicable law for its oversight or other activities with respect to the Site.

38. **Modification**

This Consent Decree may be modified upon written approval of the Parties and with the consent of the Court.

39. **Recording**

Within thirty (30) calendar days of the Effective Date, Plaintiff shall record a copy of this Consent Decree with the Los Angeles County Recorder with respect to the Site, solely for the purpose of informing future purchasers of the Site, or of any portion of the Site, of the contribution protection and covenants not to sue that are provided by this Consent Decree. The Parties shall cooperate and provide assistance in taking the steps necessary to achieve the recording of this Consent Decree.

40. **Integration**

This Consent Decree constitutes the final, complete and exclusive agreement and understanding between the Parties with respect to the settlement embodied in this Consent Decree. The Consent Decree may not be amended or

Case 2:13-cv-03600-RGK-AJW Document 190 Filed 09/16/14 Page 15 of 17 Page ID
Case 2:13-cv-03600-RGK-AJW Document 168-1 Filed 06/02/14 Page 15 of 17 Page ID
#:5152

supplemented except as provided for in the Consent Decree.

41. **Attorneys' Fees and Costs**

Settling Defendants agree to reimburse the Department for all of its costs, and the reasonable fees and costs that the Attorney General bills to the Department, related to the negotiation, approval and entry of this Consent Decree, the total amount not to exceed twenty thousand dollars ($20,000). The payment specified in this paragraph, shall be made in accordance with Paragraph 20 above, except that it shall instead bear on its face the phrase, "Site Code 300683/308401." This paragraph shall have no effect on the rights of the Department or Settling Defendants to recover such fees or costs from any other party.

If the Department brings an action against Settling Defendants to enforce this Consent Decree, and is successful in such action, the Settling Defendants against whom enforcement is sought shall reimburse the Department for all costs of such action, including, but not limited to, attorneys' fees.

42. **Counterparts**

This Consent Decree may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

43. **Applicable Law**

This Consent Decree is entered into and shall be construed and interpreted in accordance with the laws of the State of California and, where applicable, the laws of the United States.

44. **Notice**

The Settling Defendants have each hereby appointed and authorized the agent(s) identified on their signature page and Section X to this Consent Decree to receive notices, on behalf of each of them, with respect to all matters arising under or relating to this Consent Decree.

45. **Lodging and Public Notice**

This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) calendar days. The Consent Decree also is subject to a public comment period of not less than thirty (30) calendar days. The Department may modify or withdraw its consent to this Consent Decree if comments received during the public comment period disclose facts or considerations that indicate that this Consent Decree is inappropriate, improper or inadequate. Settling Defendants consent to the entry of this Consent Decree without further notice.

46. **Probate Court Approval**

This Consent Decree is conditioned upon approval by the Orange County Superior Court - Probate Division ("Probate Court"). Within 15 days of the lodging of this Consent Decree, Settling Defendants will petition the Probate Court for approval of the Consent Decree. The Consent Decree will not be effective or binding on any Party until and unless Probate Court approval of the Consent Decree is approved. If, for any reason, the Probate Court fails to approve the Consent Decree, then the Consent Decree will be void and unenforceable and may not be used as evidence in any litigation between the parties.

47. **Court Refusal to Enter Consent Decree**

If, for any reason, the Court declines to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the Consent Decree may not be used as evidence in any litigation between the Parties.

48. **Signatories**

Each signatory to this Consent Decree certifies that he or she is fully authorized by the Party he or she represents to enter into the terms and conditions of this Consent Decree, to execute it on behalf of the party represented, and to legally bind that party to all the terms and conditions of this Consent Decree.

//

//

1  The Settling Defendants consent to this Consent Decree by its duly authorized
2  representative as follows:
3
4  FOR THE ESTATE OF HAIG DULGARIAN AND DOUGLAS DULGARIAN
   AS THE EXECUTOR FOR THE ESTATE OF HAIG DULGARIAN:
5
6  _____        Date  5/28/14
7  Douglas Dulgarian
   Executor for the Estate of Haig Dulgarian
8
9
10 FOR THE SURVIVOR'S TRUST CREATED UNDER THE DULGARIAN
   FAMILY TRUST DATED SEPTEMBER 29, 1992:
11
12 _____        Date  5/28/14
13 Douglas Dulgarian
   Trustee for the Survivor's Trust Created Under the Dulgarian Family Trust Dated
14 September 29, 1992

15 Plaintiff consents to this Consent Decree by its duly authorized representative as
16 follows:
17 FOR THE DEPARTMENT OF TOXIC SUBSTANCES CONTROL:
18
19 _____        Date  5/28/14
20 Stephen W. Lavinger
   Chatsworth Cleanup Program
21 Brownfields and Environmental Restoration Program
22
   **IT IS SO ORDERED, ADJUDGED, AND DECREED.**
23
24
25 Dated: SEP 1 6 2014 , 2014        _____
                                       The Honorable R. Gary Klausner
26                                     United States District Court Judge
27
28

17  [PROPOSED] CONSENT DECREE BETWEEN PLAINTIFF
    AND THE ESTATE OF HAIG DULGARIAN