KAMALA D. HARRIS
Attorney General of California
SARAH E. MORRISON
Supervising Deputy Attorney General
OLIVIA W. KARLIN (State Bar No. 150432)
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Telephone: (213) 897-0473
Fax: (213) 897-2802
E-mail: Olivia.Karlin@doj.ca.gov
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STATE OF CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL,** <br><br> **Plaintiff,** <br><br> v. <br><br> **STANDARD NICKEL-CHROMIUM PLATING COMPANY, a California corporation, et. al,** <br><br> **Defendants.** | Case No.: CV13-03600 RGK (AJWx) <br><br> [PROPOSED] CONSENT DECREE BETWEEN PLAINTIFF AND DEFENDANT STANDARD NICKEL-CHROMIUM PLATING COMPANY; EXHIBITS <br><br> **Judge:**     **The Honorable** <br>               **R. Gary Klausner** |

**INTRODUCTION**

1.     Plaintiff the State of California Department of Toxic Substances Control ("Plaintiff" or the "Department") filed a Complaint in this matter pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., against several parties, including Defendant Standard Nickel-Chromium Plating Company.[1] Through its

---

[1] Defendant Standard Nickel-Chromium Plating Company is sometimes referred to herein as "Settling Defendant." Plaintiff and Settling Defendant are sometimes collectively referred to herein as "Parties." (See, *infra*, Section III.)

1   Complaint, Plaintiff seeks the recovery of past "Response Costs"[2] incurred by

2   Plaintiff in responding to releases and/or threatened releases of hazardous

3   substances at or from the properties located at 811, 817/819, 825, and 826 East

4   62nd Street, Los Angeles, CA 90001, also collectively known as the Standard

5   Nickel property ("Site"), pursuant to CERCLA section 107(a), 42 U.S.C. §

6   9607(a).  Plaintiff also seeks declaratory relief under CERCLA section 113(g)(2),

7   42 U.S.C. § 9613(g)(2), alleging that defendants are jointly and severally liable for

8   future Response Costs to be incurred by Plaintiff to address the extent of releases

9   and/or threatened releases of hazardous substances at or from the Site.

10       2.    In its Complaint, Plaintiff alleges in relevant part that:

11       a.    In approximately 1927, a metal plating facility, called "Dulgarian

12   Sons Standard Plating Company," was established by certain members of the

13   Dulgarian family on property at the Site.  The facility operations included the

14   chromium plating of pipes for the oil industry.  The business was later

15   incorporated in 1946 under the name Standard Nickel-Chromium Plating

16   Company.

17       b.    Settling Defendant owned the following portions of the Site during

18   the following time periods:  811 E. 62nd Street from 1988 to the present; 817/819

19   E. 62nd Street from 1988 to the present; 825 E. 62nd Street from 1988 to 1993; and

20   826 E. 62nd Street from 1981 to 1988.  Plating operations were conducted on the

21   Site during this time.  The Department contends, but Settling Defendant disputes,

22   that hazardous substances were released into the environment as a result of plating

23   operations on the Site.

24       c.    In June of 1997, the Department conducted a site screening for the

25   United States Environmental Protection Agency as part of an investigation of the

26   release and/or threatened release of hazardous substances at or from the Site.  In

27

28

---

[2] The term "Response Costs" is defined in Section III, *infra*.

   [PROPOSED] CONSENT DECREE BETWEEN PLAINTIFF AND
STANDARD NICKEL-CHROMIUM COMPANY

19841078

2008, the Department took the lead to further investigate the release and/or threatened release of hazardous substances at or from the Site. The Department's investigation established that hazardous substances including, but not limited to, hexavalent chromium, total chromium, and volatile organic compounds, including the industrial solvents trichloroethylene and perchloroethylene, were present in the soil, soil gas, and groundwater at the Site.

d.     On or about June 9, 2009, the Department issued an Imminent and Substantial Endangerment Determination and Remedial Action Order ("ISE Order") ordering potentially responsible parties, including Settling Defendant, to investigate and remediate the release of hazardous substances at or from the Site. On or about December 29, 2010, the Department issued an Amendment to the Imminent and Substantial Endangerment Determination and Remedial Action Order ("Amendment") adding certain parties and amending certain properties identified in the ISE Order.

e.     The potentially responsible parties named in the ISE Order and the potentially responsible parties named in the Amendment, including Settling Defendant, failed to complete the investigation and remediation of releases and/or threatened releases of hazardous substances at or from the Site as required by the ISE Order and Amendment.

f.     Response actions were and are necessary to remove and remedy the hazardous substances released and/or threatened to be released at and from the Site.

g.     The Department has incurred Response Costs conducting and overseeing response actions related to the release and/or threatened release of hazardous substances at or from the Site, including contamination of the soil, soil vapor and groundwater. These response actions include, but are not limited to: issuing orders to potentially responsible parties requiring response actions at and around the Site; reviewing sampling and analysis of environmental media;

3     [PROPOSED] CONSENT DECREE BETWEEN PLAINTIFF AND STANDARD NICKEL-CHROMIUM COMPANY

19841078

1   performing inspections and preparing reports; reviewing work plans for

2   investigation and remediation; conducting Site visits and overseeing field work;

3   holding public meetings; meeting with potentially responsible parties; and

4   complying with the requirements of the California Environmental Quality Act.

5   Response Costs incurred by the Department remain unpaid.

6        h.    The Department will continue to incur response costs conducting

7   and/or overseeing response actions related to the release and/or threatened release

8   of hazardous substances at or from the Site in the future.

9        3.    The Department contends, but Settling Defendant disputes, that

10   Settling Defendant, as a former owner and operator of a portion of the Site, is

11   jointly and severally liable under CERCLA for all Response Costs incurred by the

12   Department related to the Site.

13        4.    The Parties agree and this Court, by entering this Consent Decree,

14   finds that this Consent Decree has been negotiated by the Parties in good faith,

15   settlement of this matter will avoid expensive, prolonged and complicated

16   litigation between the Parties, and this Consent Decree is fair, reasonable, in the

17   public interest and consistent with the purpose of CERCLA.

18        **THEREFORE**, the Court, with the consent of the Parties to this

19   Consent Decree, hereby **ORDERS, ADJUDGES, AND DECREES**, as follows:

20        **I. JURISDICTION**

21        5.    The Court has subject matter jurisdiction over the matters alleged in

22   this action pursuant to 28 U.S.C. § 1331 and CERCLA and personal jurisdiction

23   over each of the Parties.  Venue is appropriate in this district pursuant to 28 U.S.C.

24   § 1391(b) and CERCLA.  Solely for the purposes of this Consent Decree and the

25   underlying Complaint, Settling Defendant waives all objections and defenses that

26   Settling Defendant may have to the jurisdiction of the Court or to venue in this

27   district.  Settling Defendant shall not challenge the terms of this Consent Decree

28   or this Court's jurisdiction to enter and enforce this Consent Decree.

6.     The Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree if necessary.

## II. SETTLEMENT OF DISPUTED CLAIMS

7.     This Consent Decree resolves Settling Defendant's alleged liability in connection with the release and/or threatened release of hazardous substances at or from the Site under CERCLA section 107, 42 U.S.C. § 9607, in exchange for payment by Settling Defendant to reimburse a portion of Plaintiff's Response Costs incurred and to be incurred at or in connection with the Site.

8.     Settling Defendant does not admit any of the allegations of the Complaint. Nothing in this Consent Decree shall be construed as an admission of any issue of law or fact or of any violation of law. Except as otherwise provided by this Consent Decree, this Consent Decree shall not prejudice, waive or impair any right, remedy or defense that Settling Defendant may have in any other or further legal proceeding.

9.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the Parties.

## III. DEFINITIONS

10.     Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them therein. Whenever terms listed below are used in this Consent Decree, the definitions below shall apply.

11.     "The Department" or "Plaintiff" shall mean the State of California Department of Toxic Substances Control, and its predecessors and successors. The Department is a public agency of the State of California organized and existing under and pursuant to California Health and Safety Code § 58000 et seq.  Under California law, the Department is the state agency responsible for determining whether there has been a release and/or threatened release of hazardous substances into the environment, and for determining the actions to be taken in response

thereto.

12.     "Effective Date" shall mean the date the Court enters an Order approving this Consent Decree.

13.     "Fair Market Value" shall mean the price at which the Property, or any parcel thereof, as then improved and in its then current condition, would change hands in an absolutely AS-IS, WHERE IS, WITH ALL FAULTS condition, between a willing buyer and a willing seller under actual market conditions for property substantially similar to the Property, neither being under any compulsion to buy or to sell and both having reasonable knowledge of all relevant facts (including, but not limited to, the historical and current environmental condition, the conditions imposed by this Consent Decree, the fact that the seller will not undertake any mitigation or clean up of the Property, and the possibility that Plaintiff may require the recordation of an Environmental Restrictions Covenant in the future) in an arm's length transaction.

14.     "Parties" shall mean Plaintiff and Standard Nickel-Chromium Plating Company, collectively.

15.     "Party" shall mean Plaintiff, or Standard Nickel-Chromium Plating Company.

16.     "Property" shall mean the properties located at: (a) 811 East 62nd Street; (b) 817/819 East 62nd Street, Los Angeles, CA  90001; and (c) the 78 acres located in the Pinon Hills Area, San Bernardino County, California, collectively. The 78 acres located in the Pinon Hills Area is identified by San Bernardino County Assessor's Parcel Number 306842101000.

17.     "Response Costs" shall mean all costs of "removal," "remedial action," or "response" as those terms are defined by CERCLA § 101, 42 U.S.C.§ 9601, related to the release and/or threatened release of hazardous substances at or from the Site, including the soil and groundwater.

18.     "Settling Defendant" shall mean Standard Nickel-Chromium Plating

Case 2:13-cv-03600-RGK-AJW  Document 220  Filed 11/26/14  Page 7 of 34  Page ID #:6336
Case 2:13-cv-03600-RGK-AJW  Document 185-1  Filed 09/09/14  Page 7 of 34  Page ID
#:5595

1  Company.

2      19.    The "Site" shall mean the properties located at 811, 817/819, 825,

3  and 826 East 62nd Street, Los Angeles, CA 90001, also collectively known as the

4  Standard Nickel property, including the extent of the releases of hazardous

5  substances at or from the Site, including its various parcels, into the environment,

6  including the soil and groundwater.

7          **IV.  SETTLING DEFENDANT'S OBLIGATIONS**

8      20.    Settling Defendant shall satisfy its liability to the Department as

9  follows:

10     a.    Settling Defendant shall pay the Department $500 within thirty (30)

11  days of the Effective Date.

12     b.    Sale of the Property

13         i.    Settling Defendant shall use commercially reasonable efforts to

14  sell the Property for Fair Market Value.

15         ii.    Settling Defendant shall pay the Department all Net Sale

16  Proceeds from the sale of the Property.

17     c.    For purposes of this Consent Decree, "Net Sale Proceeds" shall mean

18  the gross sale price, less costs of sale (including but not limited to commissions,

19  finders fees, attorneys' fees related to negotiation and documentation of the

20  transactions, escrow costs, title fees and costs including those for any

21  endorsements required by buyer or title company, City, State, and County

22  documentary transfer taxes, and similar items), taxes (including but not limited to

23  property taxes and assessments of all types, and income taxes and capital gains

24  taxes due as a result of the sales by Settling Defendant of the Property[3]), all

---

25      [3] Because Settling Defendant is a Sub-Chapter S Corporation, all State and
26  Federal income and capital gains taxes due as a result of such sales of the Property
    by the Settling Defendant (the "Transaction Taxes") are due from and paid by the
    shareholders directly, and not at the corporate level.  Pending determination of the
27  taxes due from Settling Defendant's shareholders as a result of the sales by Settling
28  Defendant of the Property, Settling Defendant shall hold back from the Net Sale
                                                    (continued...)

19841078

1  customary prorations of any property expenses, and amounts needed to satisfy any

2  liens, encumbrances or other items recorded against the Property that are senior to

3  the Department's Deed of Trust, and any amounts required by buyer or title

4  company to be held back at closing to satisfy an unresolved issue or contingency

5  (provided, however, that if the conditions for release of such holdback amount

6  have been met, and any funds remain in Settling Defendant's account, such

7  remainder shall be included in the Net Sale Proceeds and paid over to the

8  Department).

9       d.    For purposes of this Consent Decree, Settling Defendant shall be

10  deemed to have made commercially reasonable efforts to sell the Property if it

11  does all of the following:

12           i.    Enters into an exclusive listing agreement with a licensed

13  commercial real estate broker to list the Property at Fair Market Value.

14  Settling Defendant may enter into an exclusive listing agreement with more

15  than one licensed commercial real estate broker to list and market the

16  Property or any parcel of it.

17          ii.    Accepts any unconditional offer to purchase the Property in as-

18  is condition, and without representations or warranties, for Fair Market

19  Value.

20       e.    Settling Defendant shall notify the Department in writing when it

21  enters an agreement to sell the Property, or any parcel of it, within 10 days of

22  opening escrow to sell the Property, or any parcel thereof, and shall provide the

23  Department with a copy of the agreement to sell the Property and escrow

24  _____

25  (…continued)
Proceeds paid to the Department an amount equal to 35% of the gross sales price of
the Property or any portion thereof. Upon the filing of tax returns by Settling
26  Defendant's shareholders for the applicable year(s), Settling Defendant shall pay to
the Department the difference between the amount of the holdback for a particular
27  Property or portion thereof sold and the taxes due, if any, from Settling Defendant's
shareholders as a result of that sale.

28

8     [PROPOSED] CONSENT DECREE BETWEEN PLAINTIFF AND
            STANDARD NICKEL-CHROMIUM COMPANY

1  agreement, and shall immediately request a preliminary Seller's Estimated

2  Settlement Statement from the escrow agent to provide to the Department.  In the

3  event that the Department does not object to the terms of the sales agreement and

4  escrow within twelve (12) business days of its receipt of same, it shall be deemed

5  to have waived its right to challenge the sale price as being below Fair Market

6  Value.  Any objection must be in writing, and must state with specificity the basis

7  of the objection.  If such an objection is made, the parties will promptly confer to

8  determine if the objection can be satisfactorily resolved.

9      f.    Settling Defendant shall provide both the Seller's Estimated

10  Settlement Statement and a signed report setting forth a cash based accounting of

11  the calculation of the Net Sale Proceeds, i.e., showing the gross sales price, and

12  each item deducted from same in calculating the Net Sale Proceeds (Net Proceeds

13  Report), and pay the Net Sale Proceeds for each parcel of the Property to the

14  Department within 15 days of escrow closing date for each parcel of the Property.

15  Upon written request, Settling Defendant shall provide all supporting

16  documentation for the sale and the calculation of the Net Sale Proceeds, and the

17  purchase and escrow documents and escrow settlement statement, within 14 days

18  of the request to enable the Department to audit and verify the sale transaction(s)

19  and calculation of the Net Sale Proceeds.

20      g.    Settling Defendant agrees to sign, cooperate, and perform any act

21  necessary to perfect and cause the recordation of the Deed of Trust described in

22  Paragraph 41, below.

23      h.    Settling Defendant shall pay the Department the insurance proceeds,

24  if any, that Settling Defendant recovers from its insurance carriers as indemnity

25  payments resulting from Settling Defendant's claims against its insurers in

26  connection with the Department's Complaint in this matter, including but not

27  limited to, proceeds from the policy numbers identified in Exhibit A attached to

28  this Consent Decree.  Such proceeds shall not include any amounts paid by

9  [PROPOSED] CONSENT DECREE BETWEEN PLAINTIFF AND
STANDARD NICKEL-CHROMIUM COMPANY

19841078

Case 2:13-cv-03600-RGK-AJW   Document 220   Filed 11/26/14   Page 10 of 34   Page ID
Case 2:13-cv-03600-RGK-AJW   Document 165-39   Filed 09/09/14   Page 10 of 34   Page ID
#:5598

1 Settling Defendant's insurers to reimburse defense costs as those payments do not

2 decrease the available insurance coverage, or amounts paid by Settling

3 Defendant's insurers to other insureds.  Settling Defendant shall have no

4 obligation to bring a lawsuit or other action against its insurers to recover such

5 proceeds.  Settling Defendant shall make payments to the Department under this

6 subparagraph (20h), if any, within forty-five (45) days of recovering such

7 insurance proceeds.  Upon the earlier to occur of (a) four years of the

8 Department's completion of on-Site remedial activities or (b) resolution of any

9 dispute between Settling Defendant and its insurers, Settling Defendant shall

10 notify the Department of the amount, if any, of insurance proceeds paid to it in

11 such resolution.  This Consent Decree does not affect, impair or determine

12 coverage of any insurance policy listed in Exhibit A.

13  i. Every payment required under this Consent Decree shall be made in

14 accordance with Paragraph 21.

15  j. Settling Defendant's payment obligations shall be deemed to have

16 been satisfied in full upon:  (1) Settling Defendant's delivery of the payment due

17 under Paragraph 20(a);  (2) the Department's verification of the figures and

18 supporting documentation provided under Paragraph 20(f), which the Department

19 shall complete within ten (10) business days of its receipt of each Net Proceeds

20 Report;  (3) the Department's receipt of Net Sale Proceeds from the sale(s) of all

21 parcels of the Property due, with Settling Defendant's verified Net Proceeds

22 Report; and  (4) the Department's receipt of the payments made to the Department

23 pursuant to Paragraph 20(h), if any.

24  21. The payments specified in Paragraph 20 above, shall be made by

25 certified or cashier's check made payable to Cashier, California Department of

26 Toxic Substances Control, and shall bear on its face the phrase, "Standard Nickel

27 Chromium 294 Account."

28  a. The payments shall be sent to:

10 [PROPOSED] CONSENT DECREE BETWEEN PLAINTIFF AND
STANDARD NICKEL-CHROMIUM COMPANY

19841078

Case 2:13-cv-03600-RGK-AJW   Document 220   Filed 11/26/14   Page 11 of 34   Page ID
Case 2:13-cv-03600-RGK-AJW   Document #:6540   Filed 09/09/14   Page 11 of 34   Page ID
#:5599

Cashier
Accounting Office, MS-21A
Department of Toxic Substances Control
1001 I Street
P.O. Box 806
Sacramento, CA 95812-0806

    b.    A copy of the check shall be mailed to:

Vivian Murai, Senior Attorney
California Department of Toxic Substances Control
Office of Legal Counsel, MS-23A
1001 I Street
P.O. Box 806
Sacramento, CA 95812-0806

Or e-mailed to Vivian.Murai@dtsc.ca.gov in .pdf or .jpg format.

## V. ACCESS TO INFORMATION

22.    By no later than thirty (30) calendar days of the Effective Date, Settling Defendant shall have provided to the Department copies of any and all records, documents, and information within their possession or control, or that of their agents, relating to: (a) the ownership, operation or control of the Site; (b) the purchase, storage, use, handling, generation, treatment, transportation, or disposal of hazardous substances in connection with the Site; (c) releases and/or threatened releases of hazardous substances at or from the Site, including the soil and groundwater; and (d) removal, remedial or response actions conducted by any person at the Site.

23.    If after the Effective Date, Settling Defendant obtains any records, documents or information described in Paragraph 22 not previously provided to Plaintiff, Settling Defendant agrees to provide Plaintiff with copies of the additional records, documents or information within ten calendar days of the date Settling Defendant obtained the records, documents or information.

24.    Settling Defendant may assert confidentiality claims covering part or all of the documents or information submitted to Plaintiff under this Consent Decree to the extent permitted by and in accordance with California Health and Safety Code § 25358.2. Documents or information determined to be confidential

11    [PROPOSED] CONSENT DECREE BETWEEN PLAINTIFF AND
STANDARD NICKEL-CHROMIUM COMPANY

19841078

Case 2:13-cv-03600-RGK-AJW   Document 220   Filed 11/26/14   Page 12 of 34   Page ID
Case 2:13-cv-03600-RGK-AJW   Document 185-1   Filed 09/09/14   Page 12 of 34   Page ID
#:5600

1   by Plaintiff will be afforded the protection specified in California Health and

2   Safety Code § 25358.2.  Settling Defendant may also assert that certain

3   documents, records and other information are privileged under the attorney-client

4   privilege or any other privilege recognized by federal law.  If Settling Defendant

5   asserts such a privilege in lieu of providing documents, Settling Defendant shall

6   provide Plaintiff with a description of the document withheld and the basis for

7   asserting the privilege.

8   ## VI.  COVENANT NOT TO SUE BY PLAINTIFF

9        25.   Except as expressly provided in Section VII (Reservation of Rights)

10   of this Consent Decree, Plaintiff covenants not to sue Settling Defendant pursuant

11   to CERCLA, the California Hazardous Substances Account Act ("HSAA"),

12   California Health and Safety Code § 25300 et seq., or any other statute, regulation,

13   or common law theory to: (a) recover Plaintiff's Response Costs and all other

14   damages (with the exception of natural resource damages) related to the Site; or

15   (b) require Settling Defendant to conduct response actions, including removal or

16   remedial actions, related to the release and/or threatened release of hazardous

17   substances at or from the Site, including the soil and groundwater.  This Covenant

18   Not to Sue is conditioned upon the complete and satisfactory performance by

19   Settling Defendant of all its obligations under this Consent Decree.  However, this

20   Covenant Not to Sue shall be revoked and deemed not effective if Settling

21   Defendant fails to make the payments required by Paragraph 20 of this Consent

22   Decree.

23   ## VII.  RESERVATION OF RIGHTS

24        26.   **Obligations Under This Decree**

25        In the event Plaintiff initiates any legal proceedings against Settling

26   Defendant for non-compliance with this Consent Decree, Settling Defendant shall

27   not contest its obligation to fully comply with this Consent Decree.  However, in

28   such proceedings, Settling Defendant may raise any and all defenses that Settling

12   [PROPOSED] CONSENT DECREE BETWEEN PLAINTIFF AND
STANDARD NICKEL-CHROMIUM COMPANY

19841078

Case 2:13-cv-03600-RGK-AJW   Document 220   Filed 11/26/14   Page 13 of 34   Page ID
Case 2:13-cv-03600-RGK-AJW   Document 183-2   Filed 09/09/14   Page 13 of 34   Page ID
#:5601

1  Defendant deems to be relevant to the issue of whether or not it has complied with

2  the terms of the Consent Decree.

3      27.   **Claims Regarding Other Sites**

4      Nothing in this Consent Decree is intended or shall be construed to limit the

5  rights of any Party with respect to claims arising out of or relating to the deposit,

6  release, or disposal of hazardous substances at any location other than the Site

7  subject to this Consent Decree.  This subsection, however, shall not limit the

8  covenants not to sue and releases in this Consent Decree that apply to claims

9  arising from the spread or passive migration of hazardous substances from the

10  Site.

11      28.   **Claims Against Other Persons and Entities**

12      Nothing in this Consent Decree shall constitute or be construed as a release

13  or covenant not to sue regarding any claim or cause of action against any person

14  (as defined in CERCLA section 101(21), 42 U.S.C. § 9601(21), who is not a

15  signatory to this Consent Decree, for any liability he, she or it may have arising

16  out of or relating to the Site. The legal and equitable rights retained include, but

17  are not limited to: (i) the Department's right to compel any person who is not a

18  signatory to the Consent Decree to conduct response actions for hazardous

19  substance contamination at or from the Site; and (ii) the rights of the Parties to

20  seek reimbursement and/or other relief from any person who is not a signatory to

21  this Consent Decree for Response Costs incurred as a result of such

22  contamination.  Except as provided in Paragraph 35 (Parties Bound), nothing in

23  this Consent Decree shall be construed to create any rights in, or grant any cause

24  of action to, any person not a party to this Consent Decree.

25      29.   **Reservation of Claims**

26      The Plaintiff's Covenants Not to Sue (Section VI) do not pertain to the

27  following matters:

28      a.    Failure of Settling Defendant to meet the requirements of this

13    [PROPOSED] CONSENT DECREE BETWEEN PLAINTIFF AND
        STANDARD NICKEL-CHROMIUM COMPANY

Case 2:13-cv-03600-RGK-AJW   Document 220   Filed 11/26/14   Page 14 of 34   Page ID
Case 2:13-cv-03600-RGK-AJW   Document 183-3   Filed 09/09/14   Page 14 of 34   Page ID
#:5602

1    Consent Decree;

2         b.    Damage to natural resources, as defined in CERCLA section 101(6),

3    42 U.S.C. § 9601(6), including all costs incurred by any natural resources trustees;

4         c.    Settling Defendant's introduction of any hazardous substance,

5    pollutant, or contaminant to the Site after the Effective Date;

6         d.    Overt acts by Settling Defendant after the Effective Date that cause

7    the exacerbation of the hazardous substance conditions existing at or from the

8    Site;

9         e.    Claims based on liability arising from the past, present, or future

10   disposal of hazardous substances at sites or locations other than the Site.  This

11   subsection (e), however, shall not limit the covenants not to sue in this Consent

12   Decree that apply to claims arising from the passive migration of hazardous

13   substances from the Site; and

14        f.    Claims based on criminal liability.  At present, however, Plaintiff has

15   no pending criminal claim or investigation, nor is it aware of any facts that would

16   give rise to a criminal investigation, against any Settling Defendant.

17        30.   **Other Rights Reserved**

18        Except as expressly provided in the Consent Decree, nothing in the Consent

19   Decree is intended nor shall it be construed to preclude the Department from

20   exercising its authority under any law, statute or regulation, including, but not

21   limited to, taking action in the future to require the owner of the Site to record an

22   Environmental Restrictions Covenant.  Furthermore, nothing in the Consent

23   Decree is intended, nor shall it be construed, to preclude any other state agency,

24   department, board or entity or any federal entity from exercising its authority

25   under any law, statute or regulation.

26        31.   **Plaintiff's Further Reservation**

27        Notwithstanding any other provision in the Consent Decree, Plaintiff

28   reserves the right to institute proceedings in this action or in a new action, seeking

14    [PROPOSED] CONSENT DECREE BETWEEN PLAINTIFF AND
      STANDARD NICKEL-CHROMIUM COMPANY

Case 2:13-cv-03600-RGK-AJW   Document 220   Filed 11/26/14   Page 15 of 34   Page ID
Case 2:13-cv-03600-RGK-AJW   Document 183-1   Filed 09/09/14   Page 15 of 34   Page ID
#:5603

to compel Settling Defendant to perform additional response actions at the Site
and/or to reimburse Plaintiff for additional Response Costs if:

    a.    After the Effective Date of the Consent Decree, the Department
receives information previously unknown to the Department, indicating that the
information provided by Settling Defendant regarding its involvement at the Site
and upon which the Department relied upon in entering into the Consent Decree is
false, or in a material respect, inaccurate.

    b.    Conditions previously unknown to Plaintiff, for which Settling
Defendant is liable under any statute or law, are discovered at the Site after the
Effective Date, and these previously unknown conditions indicate a release and/or
threat of release of hazardous substances into the environment.

## VIII.  COVENANT NOT TO SUE BY SETTLING DEFENDANT

32.    Settling Defendant covenants not to sue and agrees not to assert any
claims or causes of action against Plaintiff or its contractors or employees that
arise out of the transaction or occurrence that is the subject matter of Plaintiff's
Complaint or for any injuries, losses, costs, or damages caused or incurred as a
result of the performances or requirements of this Consent Decree or the
Department's response actions at the Site.  Settling Defendant reserves the right to
take action to compel the Plaintiff to comply with the terms of this Consent
Decree.

## IX.  CONTRIBUTION PROTECTION

33.    With regard to claims for contribution against Settling Defendant for
"Matters Addressed" in this Consent Decree, the Parties agree, and the Court finds
as follows:

    a.    This Consent Decree constitutes a judicially approved settlement
within the meaning of CERCLA section 113(f)(2), 42 U.S.C. § 9613(f)(2).

    b.    This Consent Decree requires that Settling Defendant pay certain
costs with respect to its liability at the Site.

15    [PROPOSED] CONSENT DECREE BETWEEN PLAINTIFF AND
STANDARD NICKEL-CHROMIUM COMPANY

c.      Settling Defendant is entitled to the contribution protection provided by CERCLA section 113(f)(2), 42 U.S.C. § 9613(f)(2), and by state statutory and common law for the "Matters Addressed" in this Consent Decree, except for actions and claims identified in the Department's Reservation of Rights (Section VII).

d.      The "Matters Addressed" in this Consent Decree include: (1) all past and future Response Costs and all other damages (with the exception of natural resource damages) incurred by or on behalf of the Department with respect to the Site, including the Department oversight costs; (2) all past and future Response Costs that have been and/or may be incurred by or on behalf of any other person, including any past, present or future Site owner or operator, with respect to the Site; and (3) interest on amounts referred to in subsections (1) and (2).

e.      The protection provided for in this Section IX is conditioned upon compliance by Settling Defendant with its obligations under Paragraph 20 of this Consent Decree.

f.      Nothing in this Consent Decree diminishes the right of the Department under CERCLA to pursue any other person for Response Costs incurred by the Department and to enter into settlements that give rise to contribution protection with those persons.

## X. NOTIFICATION

34.      Notification to or communication among the Parties as required or provided for in this Consent Decree shall be addressed as follows:

For Plaintiff:

> Tedd Yargeau, Project Manager
> Chatsworth Cleanup Program
> California Department of Toxic Substances Control
> 9211 Oakdale Avenue
> Chatsworth, CA  91311-6505
>
> Vivian Murai, Senior Attorney
> California Department of Toxic Substances Control

16      [PROPOSED] CONSENT DECREE BETWEEN PLAINTIFF AND STANDARD NICKEL-CHROMIUM COMPANY

Office of Legal Counsel, MS-23A
P.O. Box 806
Sacramento, CA 95812-0806

For Settling Defendants:

Standard Nickel-Chromium Plating Company
c/o Sean M. Sherlock
Snell & Wilmer L.L.P.
600 Anton Boulevard, Suite 1400
Costa Mesa, CA 92626-7689

## XI.  GENERAL PROVISIONS

### 35.  Parties Bound

This Consent Decree shall apply to, be binding upon, and inure to the benefit of the Parties and their representatives, successors, heirs, legatees, and assigns.

### 36.  No Waiver of Enforcement

The failure of the Department to enforce any provision of this Consent Decree shall in no way be deemed a waiver of such provision or in any way affect the validity of this Consent Decree.  The failure of the Department to enforce any such provision shall not preclude it from later enforcing the same or any other provision of this Consent Decree.

### 37.  No Findings

The statements of fact set forth in this Consent Decree are not intended to constitute a finding by the Department as to the risks to human health or the environment that may be posed by contamination at the Site.  This Consent Decree does not constitute a representation by the Department that the Site, or any part thereof, is fit for any particular purpose.

### 38.  Governmental Liability

Nothing herein is intended, nor shall be construed, to limit, impair, or prejudice the governmental tort, statutory or sovereign immunities available to the Department under applicable law for its oversight or other activities with respect

17    [PROPOSED] CONSENT DECREE BETWEEN PLAINTIFF AND STANDARD NICKEL-CHROMIUM COMPANY

19841078

Case 2:13-cv-03600-RGK-AJW   Document 220   Filed 11/26/14   Page 18 of 34   Page ID
#:6347
Case 2:13-cv-03600-RGK-AJW   Document 183-1   Filed 09/09/14   Page 18 of 34   Page ID
#:5606

1   to the Site.

2         39.   **Modification**

3       This Consent Decree may be modified upon written approval of the Parties

4   and with the consent of the Court.

5         40.   **Recording**

6       Within thirty (30) calendar days of the Effective Date, Plaintiff shall record

7   a copy of this Consent Decree with the Los Angeles County Recorder with respect

8   to the Site.  The Parties shall cooperate and provide assistance in taking the steps

9   necessary to achieve the recording of this Consent Decree.

10         41.   **Deed of Trust**

11       a.   Settling Defendant shall sign a Deed of Trust in favor of the

12   Department to secure performance of Settling Defendant's obligation to pay the

13   Department the Net Sale Proceeds.

14       b.   The Deed of Trust shall be held by an independent third party (e.g.,

15   title or escrow company, or bank or credit union), and shall be in the form

16   substantially similar to the one attached hereto as Exhibit B.

17       c.   The Parties agree that nothing herein shall vest the Department with

18   any ownership interest in the Property, and that they are settling this matter due to

19   the various uncertainties associated with the litigation.  The Department alleges

20   that the response costs it seeks through its Complaint in this matter may exceed

21   the value of the Net Sale Proceeds, and that the Department is accepting the Net

22   Sale Proceeds in satisfaction of its claims as creditor for response costs, solely to

23   facilitate a consensual resolution of this matter.  By accepting this Deed of Trust,

24   the Department shall not become and shall not be deemed an owner of the

25   Property, either equitable, legal, or otherwise.

26       d.   The Department may require the trustee under the Deed of Trust to

27   foreclose on the Deed of Trust either under the terms specified therein, or if

28   Settling Defendant does not sell the Property for Fair Market Value on or before

18   [PROPOSED] CONSENT DECREE BETWEEN PLAINTIFF AND
STANDARD NICKEL-CHROMIUM COMPANY

19841078

Case 2:13-cv-03600-RGK-AJW   Document 220   Filed 11/26/14   Page 19 of 34   Page ID
Case 2:13-cv-03600-RGK-AJW   Document 185-1   Filed 09/09/14   Page 19 of 34   Page ID
#:6548
#:5607

1   the third anniversary of the date that the Department gives notice that it has

2   completed active remediation work at the Site.

3         e.    Notwithstanding any other provision of this Consent Decree or the

4   Deed of Trust, the Parties acknowledge and agree that Settling Defendant shall

5   have no obligation under this Consent Decree or the Deed of Trust to pay any

6   taxes or assessments due upon the Property, or to maintain commercially

7   reasonable insurance coverage for the Property, or to maintain the Property in

8   good repair and condition, and that Settling Defendant's failure to operate or

9   maintain the Property, or any parcel thereof, in conformance with the express

10   conditions imposed under the Deed of Trust shall not constitute a violation of or

11   default under this Consent Decree. The parties further acknowledge and agree

12   that in the event that any condition under the Deed of Trust is not satisfied, the

13   Department's sole remedy shall be foreclosure upon the applicable parcel(s) of

14   Property.

15         f.    The Parties acknowledge and agree that upon the foreclosure of the

16   Property, or any parcel thereof, Settling Defendant's obligations under this

17   Consent Decree with respect to the parcel or parcels foreclosed upon shall be

18   deemed fully satisfied.

19         g.    Settling Defendant agrees to obey all laws and ordinances in its

20   management of the Property. Settling Defendant acknowledges that the

21   Department will continue to remediate the Site.

22         h.    The Department shall not be responsible for paying any taxes or

23   assessments, or for maintaining commercially reasonable insurance coverage for

24   the Property at any time prior to its foreclosure upon the Property or any parcel

25   thereof.

26         42.   **Integration**

27         This Consent Decree constitutes the final, complete and exclusive

28   agreement and understanding between the Parties with respect to the settlement

Case 2:13-cv-03600-RGK-AJW   Document 220   Filed 11/26/14   Page 20 of 34   Page ID
Case 2:13-cv-03600-RGK-AJW   Document 183-1   Filed 09/09/14   Page 20 of 34   Page ID
#:5608

1    embodied in this Consent Decree.  The Consent Decree may not be amended or

2    supplemented except as provided for in the Consent Decree.

3          43.   **Attorneys' Fees and Costs**

4          If the Department brings an action against Settling Defendant to enforce this

5    Consent Decree, and is successful in such action, Settling Defendant shall

6    reimburse the Department for all costs of such action, including, but not limited to,

7    attorneys' fees.

8          44.   **Counterparts**

9          This Consent Decree may be executed in two or more counterparts, each of

10   which shall be deemed an original, but all of which together shall constitute one

11   and the same instrument.

12         45.   **Applicable Law**

13         This Consent Decree is entered into and shall be construed and interpreted

14   in accordance with the laws of the State of California and, where applicable, the

15   laws of the United States.

16         46.   **Notice**

17         Settling Defendant has appointed and authorized the agent identified on its

18   signature page and Section X to this Consent Decree to receive notices with

19   respect to all matters arising under or relating to this Consent Decree.

20         47.   **Lodging and Public Notice**

21         This Consent Decree shall be lodged with the Court for a period of not less

22   than thirty (30) calendar days.  The Consent Decree also is subject to a public

23   comment period of not less than thirty (30) calendar days.  The Department may

24   modify or withdraw its consent to this Consent Decree if comments received

25   during the public comment period disclose facts or considerations that indicate

26   that this Consent Decree is inappropriate, improper or inadequate.  Settling

27   Defendant consents to the entry of this Consent Decree without further notice.

28

                            20   [PROPOSED] CONSENT DECREE BETWEEN PLAINTIFF AND
                               STANDARD NICKEL-CHROMIUM COMPANY

Case 2:13-cv-03600-RGK-AJW   Document 220   Filed 11/26/14   Page 21 of 34   Page ID
Case 2:13-cv-03600-RGK-AJW   Document 165   Filed 09/09/14   Page 21 of 34   Page ID
#:5609
#:5609

48. **Court Refusal to Enter Consent Decree**

If, for any reason, the Court declines to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the Consent Decree may not be used as evidence in any litigation between the Parties.

49. **Signatories**

Each signatory to this Consent Decree certifies that he or she is fully authorized by the Party he or she represents to enter into the terms and conditions of this Consent Decree, to execute it on behalf of the party represented, and to legally bind that party to all the terms and conditions of this Consent Decree.

Settling Defendant consents to this Consent Decree by its duly authorized representative as follows:

FOR STANDARD NICKEL-CHROMIUM PLATING COMPANY:

_George Dulgarian_ (signature)                Date 9-8-14

George Dulgarian,
Vice President of Standard Nickel-Chromium Plating Company

Plaintiff consents to this Consent Decree by its duly authorized representative as follows:

FOR THE DEPARTMENT OF TOXIC SUBSTANCES CONTROL:

_Stephen W. Lavinger_ (signature)                Date 9-9-14

Stephen W. Lavinger,
Chatsworth Cleanup Program
Brownfields and Environmental Restoration Program

[PROPOSED] CONSENT DECREE BETWEEN PLAINTIFF AND
STANDARD NICKEL-CHROMIUM COMPANY

19841078

Case 2:13-cv-03600-RGK-AJW   Document 220   Filed 11/26/14   Page 22 of 34   Page ID
Case 2:13-cv-03600-RGK-AJW   Document 185-1   Filed 09/09/14   Page 22 of 34   Page ID
#:5610

1    IT IS SO ORDERED, ADJUDGED, AND DECREED.

2

3    Dated: ___NOV 2 6 2014___, 2014         *Gary Klausner*

4                                            The Honorable R. Gary Klausner
                                             United States District Court Judge
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        22   [PROPOSED] CONSENT DECREE BETWEEN PLAINTIFF AND
                                             STANDARD NICKEL-CHROMIUM COMPANY

19841078

Case 2:13-cv-03600-RGK-AJW   Document 220   Filed 11/26/14   Page 23 of 34   Page ID
Case 2:13-cv-03600-RGK-AJW   Document #:6352 Filed 09/09/14   Page 23 of 34   Page ID
#:5611

# EXHIBIT A

Case 2:13-cv-03600-RGK-AJW   Document 220   Filed 11/26/14   Page 24 of 34   Page ID
Case 2:13-cv-03600-RGK-AJW   Document 163-3   Filed 09/09/14   Page 24 of 34   Page ID
#:5612

### Copy of Standard Nickel Policies

Policy Number:
33 AB 800302 CMA
33 AL 049682 CC
33 AL 053554 CC
33 AL 41105 CC
33 AL 45242 CC
33 AL 78661 CC
33 AL 800302 CC
33 AL 800302 CC 0
33 AL 800302 CCA
33 AL 81983 CC
33 SM 054008 FCA
33 SM 90528 FCA
33 XS 1328 WCA
33 XS 1328 WCA
33 XS 1328 WCA
33 XS 1328 WCA
33 XS 1328 WCA
83 GL 5103741 CCI part of 83 ACM 5103741
83 GL 5355673 CCI part of 83 ACM 5355673
83 GL 5727886 CCI part of 83 ACM 5727886
83 GL 5731385 CCI part of 83 ACM 5731385
83 SM 714790 FCA
83 SM 723358 FCA
83 SM 844200 FCS
83 SM 891322 FCS
83 SM 981055 FCA
83 SM 994126 FCA
83 XS 124038 WCA
83 XS 2512 WCA
83 XS 2512 WCA
83 XS 509563 WCA
83 XS 510519 WCA
83 XS 540515 WCA
83 XS 576904 WCA
86 GL 21101336 CCI part of 86 ACM 21101336
86 GL 22964957 CCI part of 86 ACM 22964957
86 GL 23815825 CCI part of 86 ACM 23815825
86 GL 24713792 CCI part of 86 ACM 24713792
86 GL 25301558 CCI part of 86 ACM 25301558
86 XS 20725778 WCA
86 XS 22009010 WCA
K-223 3300
P-660-452N2827-TIL-98
P-660-452N2827-TIL-99
P-660-633X6121-TIL-00
P-660-633X6121-TIL-01
PJ-660-452N2827-TIL-97

20037818.1

Case 2:13-cv-03600-RGK-AJW   Document 220   Filed 11/26/14   Page 25 of 34   Page ID
Case 2:13-cv-03600-RGK-AJW   Document #85354 Filed 09/09/14   Page 25 of 34   Page ID
#:5613

33 SM 054008 FCA
PJ-660-452N2839-TIL-97
PJ-660-452N2839-TIL-98
K-215 0900

20037818.1

Case 2:13-cv-03600-RGK-AJW   Document 220   Filed 11/26/14   Page 26 of 34   Page ID
Case 2:13-cv-03600-RGK-AJW   Document 185-15   Filed 09/09/14   Page 26 of 34   Page ID
#:5614
#:6355

# EXHIBIT B

Case 2:13-cv-03600-RGK-AJW   Document 220   Filed 11/26/14   Page 27 of 34   Page ID
Case 2:13-cv-03600-RGK-AJW   Document 185   Filed 09/09/14   Page 27 of 34   Page ID
#:5615

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

The State of California
Department of Toxic Substances Control

_____

_____

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# DEED OF TRUST

**This DEED OF TRUST**, is executed on the ____ day of September, 2014, by **STANDARD NICKEL-CHROMIUM PLATING COMPANY, A CALIFORNIA CORPORATION,** herein called TRUSTOR, whose address is  826 E. 62nd Street, Los Angeles, California 90001, to [_____,] herein called TRUSTEE, whose address is [_____] for the benefit of **THE STATE OF CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL,** herein called BENEFICIARY whose address is 1001 I Street, Sacramento, California 95812-0806.

WITNESSETH: That Trustor grants to Trustee in trust, with power of sale, that property (the "Collateral") in the City of Los Angeles, County of Los Angeles, State of California, described as:

    See Exhibit A attached hereto and incorporated herein.

    APN: 6007-009-018, 6007-009-026

    Commonly known as 811 East 62nd Street and 817/819 East 62nd Street, Los Angeles, California 90001.

    This Deed of Trust is given to secure performance by Trustor of its covenants and agreements under that certain **CONSENT DECREE,** between Trustor and Beneficiary, dated _____2014, in Case No. CV13-03600 RGK (AJWx) in the United States District Court for the Central District of California.  As required in order to make the duties of the parties clear, the terms and conditions of said Consent Decree are incorporated herein by reference as if set out in full.

A.    It is mutually agreed:

    1)  That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner as if same were "Net Sale Proceeds," as defined in the Consent Decree.

    2)  That by accepting the Net Sale Proceeds of the sale of any single piece of property which is encumbered by this Deed of Trust, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay, except with respect to the property from which such Net Sale Proceeds are received.

Case 2:13-cv-03600-RGK-AJW   Document 220   Filed 11/26/14   Page 28 of 34   Page ID
Case 2:13-cv-03600-RGK-AJW   Document 183-7   Filed 09/09/14   Page 28 of 34   Page ID
#:5616

3) That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed of Trust, Trustee shall: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon, join in any extension agreement or any agreement subordinating the lien or charge hereof.

4) That upon written request of Beneficiary, and upon surrender of this Deed of Trust to Trustee for cancellation and retention or other disposition as Trustee in its sole discretion may choose and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder, or such portion of same that Beneficiary has requested be released from the lien hereof. The Grantee in such conveyance may be described as "the person or persons legally entitled thereto".

5) That upon material default by Trustor in performance of any agreement hereunder, Beneficiary may declare all performance secured hereby immediately due to Trustee by written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Among those material defaults described in the preceding sentence are the following: (a) non-payment of any and all taxes and assessments before delinquency or failure to pay any and all charges, fines, and impositions attributable to the Collateral; (b) failure to maintain commercially reasonable insurance coverage with respect to the Collateral; (c) Trustor's failure to obey all laws and ordinances in its management of the Collateral; or (d) Trustor's failure to take all reasonable steps to preserve the priority of the Beneficiary's lien as it is established in this Deed of Trust. Beneficiary also shall deposit with Trustee this Deed of Trust and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall pay the remainder to Beneficiary.

6) Beneficiary, or any legal successor in interest to the rights of performance under the Consent Decree, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed of Trust is recorded and the name and address of the new Trustee.

7) That this Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

8) That Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other deed of trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

B. Additional Terms.

1) By way of explanation and not limitation, the parties hereto acknowledge and agree that all terms and conditions of this Deed are subject and subordinate to the terms and conditions of the Consent Decree, and that in the event of a conflict between the terms hereof and any term in the Consent Decree, the terms of the Consent Decree shall prevail.

2) The lien of this Deed of Trust secures a non-recourse obligation of Trustor, as specifically described in the

Case 2:13-cv-03600-RGK-AJW   Document 220   Filed 11/26/14   Page 29 of 34   Page ID
Case 2:13-cv-03600-RGK-AJW   Document 185358 Filed 09/09/14   Page 29 of 34   Page ID
#:5617

Consent Decree, and no term hereof or general term governing the use or enforcement of Deeds of Trust shall operate to alter or increase Trustor's obligations set forth in the Consent Decree.

3) This Deed of Trust encumbers two parcels of real property, and it is contemplated under the terms of the Consent Decree that each will be sold separately, and at the time of such sale, Beneficiary shall instruct Trustee to record a partial reconveyance of the lien of this Deed of Trust releasing the property that is sold but retaining the lien on the unsold parcel. The partial reconveyance shall be requested and processed as promptly as possible in order to facilitate any such sale, which will require that this Deed of Trust shall not encumber the parcel sold upon the close of escrow for such parcel. Any such partial release and reconveyance shall not cause the reconveyance of this Deed of Trust with respect to unsold property, nor shall it otherwise modify or alter the terms of the Deed of Trust with respect to such unsold property.

4) Trustor shall cooperate and perform any act necessary to perfect and cause the recordation of this Deed of Trust.

The undersigned Trustor requests that a copy of any notice of default and of any notice of sale hereunder be mailed to him at his address hereinbefore set forth.

**Signature of Trustor**

**STANDARD NICKEL-CHROMIUM PLATING COMPANY,
A CALIFORNIA CORPORATION**

By: _____
Name:
Its:

Add Notarial Acknowledgement

Case 2:13-cv-03600-RGK-AJW   Document 220   Filed 11/26/14   Page 30 of 34   Page ID
Case 2:13-cv-03600-RGK-AJW   Document#:8559   Filed 09/09/14   Page 30 of 34   Page ID
#:5618

# EXHIBIT A

## LEGAL DESCRIPTION

811 East 62nd Street, Los Angeles, California 90001
APN: 6007-009-018

> That portion of the Section 20, Township 2 South, Range 13 West, S.B.B. and
> M., in the City of Los Angeles, County of Los Angeles, State of California,
> described as follows:
>
> Beginning at a point in the East line of Avalon Boulevard, formerly South Park
> Avenue, distant South along the East line, 1981 feet from a point which is distant
> North 89 degrees 25 minutes East 45 feet from the Northwest corner of the
> Northeast quarter of said Section 20; thence North 89 degrees 25 minutes East
> 1200 feet to the true point of beginning; thence from said true point of
> beginning, North 89 degrees 25 minutes East 80 feet; thence South 228 feet;
> thence South 89 degrees 25 minutes West 80 feet; thence North 228 feet to the
> true point of beginning.

817/819 East 62nd Street, Los Angeles, California 90001
APN: 6007-009-026

> That portion of Section 20, Township 2 South, Range 13 West, SBM, in the city
> of Los Angeles, county of Los Angeles, state of California, described as follows:
>
> Beginning at a point in the East line of South Park Avenue, now Avalon
> Boulevard, distant South along said East line 1981 feet from a point which is
> distant North 89 degrees 25 minutes East 45 feet from the Northwest corner of
> the Northeast quarter of said Section 20; thence N. 89 degrees 25 minutes East
> 1280 feet to the true point of beginning, said true point of beginning being in the
> North line of the land conveyed to Wilbert J. Austin, by deed recorded in book
> 2454 page 278, Official Records, distant Easterly 80 feet from the Northwest
> corner of said land; thence from said true point of beginning North 89 degrees
> 25 minutes East 80 feet; thence South 228 feet; thence South 89 degrees 25
> minutes West 80 feet; thence North 228 feet to the true point of beginning.

Case 2:13-cv-03600-RGK-AJW   Document 220   Filed 11/26/14   Page 31 of 34   Page ID
Case 2:13-cv-03600-RGK-AJW   Document 165-1   Filed 09/09/14   Page 31 of 34   Page ID
#:5619
#:5619

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

The State of California
Department of Toxic Substances Control

———————————————
———————————————

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# DEED OF TRUST

This **DEED OF TRUST**, is executed on the ____ day of September, 2014, by **STANDARD NICKEL-CHROMIUM PLATING COMPANY, A CALIFORNIA CORPORATION**, herein called TRUSTOR, whose address is  826 E. 62nd Street, Los Angeles, California 90001, to [_____,] herein called TRUSTEE, whose address is [_____] for the benefit of **THE STATE OF CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL**, herein called BENEFICIARY whose address is 1001 I Street, Sacramento, California 95812-0806.

WITNESSETH: That Trustor grants to Trustee in trust, with power of sale, that property (the "Collateral") in the County of San Bernardino, State of California, described as:

See Exhibit A attached hereto and incorporated herein.

APN: 306842101

Commonly known as 78 acres located in Pinon Hills, San Bernardino County, California, which is identified by San Bernardino County.

This Deed of Trust is given to secure performance by Trustor of its covenants and agreements under that certain **CONSENT DECREE**, between Trustor and Beneficiary, dated _____2014, in Case No. CV13-03600 RGK (AJWx) in the United States District Court for the Central District of California.  As required in order to make the duties of the parties clear, the terms and conditions of said Consent Decree are incorporated herein by reference as if set out in full.

A.    It is mutually agreed:

1)  That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner as if same were "Net Sale Proceeds," as defined in the Consent Decree.

2)  That by accepting the Net Sale Proceeds of the sale of any single piece of property which is encumbered by this Deed of Trust, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay, except with respect to the property from which such Net Sale Proceeds

Case 2:13-cv-03600-RGK-AJW   Document 220   Filed 11/26/14   Page 32 of 34   Page ID
Case 2:13-cv-03600-RGK-AJW   Document 165-1   Filed 09/09/14   Page 32 of 34   Page ID
#:5620
#:5620

are received.

    3) That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed of Trust, Trustee shall: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon, join in any extension agreement or any agreement subordinating the lien or charge hereof.

    4) That upon written request of Beneficiary, and upon surrender of this Deed of Trust to Trustee for cancellation and retention or other disposition as Trustee in its sole discretion may choose and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder, or such portion of same that Beneficiary has requested be released from the lien hereof. The Grantee in such reconveyance may be described as "the person or persons legally entitled thereto".

    5) That upon material default by Trustor in performance of any agreement hereunder, Beneficiary may declare all performance secured hereby immediately due to Trustee by written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Among those material defaults described in the preceding sentence are the following: (a) non-payment of any and all taxes and assessments before delinquency or failure to pay any and all charges, fines, and impositions attributable to the Collateral; (b) failure to maintain commercially reasonable insurance coverage with respect to the Collateral; (c) Trustor's failure to obey all laws and ordinances in its management of the Collateral; or (d) Trustor's failure to take all reasonable steps to preserve the priority of the Beneficiary's lien as it is established in this Deed of Trust. Beneficiary also shall deposit with Trustee this Deed of Trust and all documents evidencing expenditures secured hereby.

    After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

    After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall pay the remainder to Beneficiary.

    6) Beneficiary, or any legal successor in interest to the rights of performance under the Consent Decree, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed of Trust is recorded and the name and address of the new Trustee.

    7) That this Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

    8) That Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other deed of trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

B. Additional Terms.

    1) By way of explanation and not limitation, the parties hereto acknowledge and agree that all terms and conditions of this Deed are subject and subordinate to the terms and conditions of the Consent Decree, and that in the event of a conflict between the terms hereof and any term in the Consent Decree, the terms of the Consent Decree shall prevail.

Case 2:13-cv-03600-RGK-AJW   Document 220   Filed 11/26/14   Page 33 of 34   Page ID
Case 2:13-cv-03600-RGK-AJW   Document 185-2   Filed 09/09/14   Page 33 of 34   Page ID
#:5621

2)  The lien of this Deed of Trust secures a non-recourse obligation of Trustor, as specifically described in the Consent Decree, and no term hereof or general term governing the use or enforcement of Deeds of Trust shall operate to alter or increase Trustor's obligations set forth in the Consent Decree.

3)  Trustor shall cooperate and perform any act necessary to perfect and cause the recordation of this Deed of Trust.

The undersigned Trustor requests that a copy of any notice of default and of any notice of sale hereunder be mailed to him at his address hereinbefore set forth.

### Signature of Trustor

**STANDARD NICKEL–CHROMIUM PLATING COMPANY,
A CALIFORNIA CORPORATION**

By: _____
Name:
Its:

Add Notarial Acknowledgement

Case 2:13-cv-03600-RGK-AJW   Document 220   Filed 11/26/14   Page 34 of 34   Page ID
Case 2:13-cv-03600-RGK-AJW   Document #6303   Filed 09/09/14   Page 34 of 34   Page ID
#:5622

# EXHIBIT A

## LEGAL DESCRIPTION

Government Lot 2 of the fractional Northeast quarter of Section 3, Township 4 North, Range 7 West, San Bernardino Meridian, in the County of San Bernardino, State of California, according to United States Government Township Plat thereof.

EXCEPT a 1/16th of all coal, oil, gas and other mineral deposits as contained in said land, as provided by an Act of Legislature, Approved May 25, 1921 (Chapter 303, Statutes of California, 1921) and as reserved in Patent from State of California, recorded September 27, 1948, in Book 2079 of Official Records, page 481